## MILLER, ADMINISTRATOR, v. HIDER.

1. ADMINISTRATOR DE BONIS NON.

The validity of the appointment of an administrator *de bonis non* is not affected by the fact that the first administrator was appointed before the expiration of the time in which those having a preferred right to administer are allowed by law to make application for letters, especially when the irregularity of such improvident appointment has been waived by the acquiescence of those who had a preferred right.

2. ADMINISTRATION—REMOVAL—JURISDICTION.

The court's jurisdiction to remove an administrator is limited to the causes enumerated in the statute. It has no discretionary power.

*Appeal from the District Court of Arapahoe County.*

ABOUT the 1st of January, 1893, Aaron Ray, a resident of Louisville, Ky., temporarily residing in Boulder, in this state, died intestate at the home of his daughter, Henrietta Hider (appellee), in the city of Denver, leaving a wife, Annie Ray, and seven children by a former wife. Shortly after his death, Robert J. Pitkin, Esq., was appointed to administer his effects in the state of Colorado. His inventory of the estate was as follows: Cash in First National Bank of Boulder, Colo., $3,053.50; one gold watch and chain, $100.

It appears that during the administration of Pitkin, some of the assets were disbursed, and that he changed money in the First National Bank of Boulder to the Union National Bank of Denver, and that on July 29, 1893, he had on deposit in the Union National Bank of Denver $2,328.50, the money of the estate.

About that date the Union National Bank failed or suspended payment. Pitkin applied in the county court for leave to take from the bank time certificates of deposit to enable the bank to pay, which petition was granted. Certificates of deposit were issued by the bank. Pitkin resigned as administrator, and on August 28, 1893, Miller (appellant) was appointed in his place.

On the 18th day of October, 1894, appellee filed in the county court a petition asking for a removal of appellant as administrator of the estate, and that she be appointed in his stead.

It was charged in the petition that upon the resignation of Pitkin, Miller (appellant) improperly and surreptitiously procured his own appointment as administrator of the estate, notwithstanding the petitioner was a resident of this state and a relative and willing to serve as administratrix; that Miller was the attorney of Pitkin, administrator, and as such was paid by Pitkin $250 for services out of the assets of the estate; that such sum was grossly exorbitant, unreasonable and excessive compensation for such services; that by reason of having been the attorney of Pitkin he was disqualified to act as administrator; that he was wholly irresponsible and insolvent; that he had wasted and mismanaged the estate; that Miller, as such administrator, received certain certificates of deposit of the Union National bank to the amount of $2,068; that they were worth their face or par, and could have been readily sold for that amount; that Miller obtained an order from the county court to sell the certificates for 80 per cent on the dollar; that such sale was unnecessary; that there was no urgent demand at the time of such sale for funds of said estate; that in selling the certificates he was grossly negligent in his duties as administrator; that appellant, as administrator, has neglected to defend the estate against unjust claims; that Mrs. Annie Ray, the widow, has filed certain pretended claims against said estate which had not yet been heard or allowed, and charges that Miller, as administrator, had coöperated with and been in collusion with the widow.

Appellant answered, denying that he improperly or for any improper purpose applied for appointment as administrator; alleges that all the heirs of Aaron Ray were of full age at the time of his death; knew of the appointment of Robert Pitkin as administrator, and permitted him to act as such without objection and received the benefits thereof;

that they received large amounts of money from him which were divided among them; that appellant was appointed administrator with the full knowledge and consent of the widow; that the time allowed by statute for application of the heir at law to appointment had then expired; didn't know whether appellee was the daughter of Ray or not; didn't know whether or not she resided in the state at the time, but that she made no application to be appointed administratrix until after the expiration of the time under the statute had elapsed. Denied that he is totally or at all unfit for the office of administrator of the estate; denied the charge of unfitness and insolvency; denied that he had wasted or mismanaged the estate or that he was insolvent. Admits that the principal assets were certificates of deposit of the Union National Bank. Alleges that the transaction with the Union National Bank was made by Pitkin, with which he had nothing to do, and for which he was not responsible. Alleged that the certificates were of uncertain value; and denied that the bank was ready and willing to redeem the certificates at par. Denies that he had failed to defend against unjust claims or that he had coöperated with or acted in collusion with Annie Ray, the widow.

An order was made in the county court for the removal of appellant as administrator. Case was certified to the district court. The order of the lower court was sustained removing Miller as administrator, from which judgment an appeal was taken to this court.

Messrs. Miller & Sayer, Mr. J. T. Deweese and Mr. W. P. Freeman, for appellant.

Mr. W. E. Richards and Messrs. Thomas, Bryant & Lee, for appellee.

Reed, P. J., delivered the opinion of the court.

Robert J. Pitkin was appointed administrator February 14, 1893. Appellee, a resident of the state, was at that time

temporarily absent; returned the ensuing month. No objection was made by appellee. No petition for his removal nor application of appellee to be appointed in his stead as next of kin. Mr. Pitkin transacted nearly all the business of the estate, administrating without question or objection; collected and distributed all or nearly all the available assets of the estate. He resigned September 6, 1893. At the time of his resignation the assets remaining in his hands appear to have been three certificates of deposit of the Union National Bank, which had suspended payment. At the time the bank suspended, Pitkin, as administrator, had in it the money of the estate, amounting to $2,328.50. He applied to the county court for leave to·take time certificates of the suspended bank for the amount, which was allowed. Appellant was appointed administrator to succeed Mr. Pitkin. No objection to his appointment appears to have been made, nor to his administration, until October 18, 1894, although the appointment was made August 28, 1893. On September 14, 1893, appellant represented to the county court " that assets of said estate consist principally of certain bank certificates of uncertain value. Prays permission to sell the same for the purpose of paying claims and costs of administration, provided same can be sold at eighty cents on the dollar." The order was made allowing the sale without objection, and the sale of the certificates for $2,068.05 was made, realizing $1,654.44, with which appellant charged himself.

On August 29, 1893, he made a report, in which he credits himself with $108.50 paid to discharge sundry small bills allowed by the court, apparently without contest, and shows a balance in hand of $1,545.94.· On February 6, 1894, he filed another report, in which he credits himself with sums paid on bills to doctors and counsel for the widow amounting to $231. The bills appear to have been allowed by the court· without protest or objection. This left in his hands for distribution $1,314.94, the distribution of which and final settlement appears to have been all left for appellant to do, when the application was made for his removal.

It appears that there were eight heirs,—the widow and seven children by a former wife,—all of full age, and that appellee was the only one of the number who felt aggrieved. The other seven, by counsel indorse and support appellant in this contest.

The charges made were: *First.* The appellant was attorney for Mr. Pitkin during his administration, and that he was paid for services by Mr. Pitkin $250 from the assets of the estate, and that the sum was grossly exorbitant and excessive. Admitting the allegation to be true, it occurred previous to his administration,—was paid by the former administrator to him. If improperly paid, the charge of maladministration would be against the former administrator, who had made, without objection, a final settlement. That he had received too great a fee for legal services prior to his appointment had no connection with his administration, did not disqualify him, and was no ground for impeachment or removal. *Second.* That appellant had wasted and mismanaged the estate in selling the certificates at 80 cents on the dollar.

Some evidence in support of this allegation was attempted. W. H. Trask, cashier of the Union National Bank, was called. His evidence, to say the least, was peculiar. He admitted that the bank was suspended, was not taking up its certificates on presentation and in the ordinary course of business; said bank had not sufficient funds to meet demands; if given time it would pay them all. "Whenever they [the certificates] were offered to the bank at a discount, we promptly paid the face of them, not to allow them to go at a discount on the street." Did not recollect appellants going to the bank and trying to get "a settlement at some price of these certificates. If you had made any such offer, would have paid them in full,—our custom at the time. Mr. Pitkin could have got it out if he said he would have to have it; could have got it in full. He didn't represent it as necessary. I say if you had come to our bank with that certificate and represented that you were going to sell it at a discount, I would have paid it in full; that I did with other

certificates before and after." Again: "If Judge Miller had come to me and said he was going to sell that at eighty cents on the dollar, I would not have permitted it, but would have paid it in full."

This shows a curious management of bank affairs. The bank was not taking up its paper upon presentation, but in order to get the money "an urgent appeal for money must be made," or an offer made the bank to discount the paper. We are not informed what was necessary to constitute an "urgent appeal," nor why it was necessary to offer a *discount to obtain the money in full;* but the trouble is that it was not shown that appellant was informed of the fact that he could obtain the face by an "urgent appeal" or offering a discount. It is quite probable that if he had been informed he would have made the most urgent appeal of which he was capable and offered the paper at a ruinous discount.

Appellant's uncontradicted evidence was as follows:

"I think I sold $2,068.05 of these certificates. I so reported and charged myself. * * * It was a public sale; was talked of for some time. I went to the American National Bank. Went to Mr. Swallow. Employed a broker and sent him around over the city for two weeks hunting the best figure I could get. Went everywhere I thought there was a chance. Asked the bank; they said they were good, but I could not get the money. There were claims urged for payment and creditors were clamorous. I had to use my own money and some of the creditors'. I paid them rather than be annoyed to death. My recollection would be I sold all of them. The business was done through Horton, the broker that was employed. I sold all of them for some price. I sold some of my own. I sold as low as 75 cents. I knew the bank had reopened; as I understand it, that certain certificates had become due. If you mean in the general sense of the term,—to pay what they owed,—I don't consider that they reopened at all. Had issued time certificates; they were open doing some kind of business. Impression left on me is, it didn't look like a bank doing business, the recollec-

tion I have of it now.　My idea was simply to do my duty, and try and save what of that estate I could for the parties interested, and it was done, if you please, at the request of the parties interested."

The remaining charge is "that Mrs. Annie Ray, the widow, has filed certain pretended claims against said estate which have not yet been heard or allowed," and that appellant had coöperated with and colluded with the widow.

The statement is too indefinite to require any attention. The filing of questionable claims by the widow cannot be imputed to the administrator.　It is not stated that he had either advocated or resisted them, and the charge of coöperation and collusion is too general, and is not sustained by any evidence.　The fact that the other six heirs had not learned that they were being wronged and the assets of the estate dissipated goes far to sustain the inference that the trouble arose between appellee and the widow.　No evidence appears to show any fraudulent or illegal acts of the administrator, nor any statutory cause for removal.

By statute (secs. 4696 and 4697, Mills' Ann. Stats.), it is provided that the estate shall be administered by the widow or next kin, preference being given to the widow, if they will accept the same and are not disqualified.

Mills' Ann. Stats., p. 2429, sec. 4696 : "But if no widow or other relative of the intestate shall apply within twenty days from the death of such intestate, the county court may grant administration to any creditor or creditors who shall apply for the same ; and in case no such application be made by any creditor or creditors within ten days next ensuing the lapse of said term of twenty days as aforesaid, administration may be granted to any person or persons whom the judge of probate may think will best manage the estate."

By section 4697 it is provided that within the time allowed the widow or next of kin to apply to administer, applicants shall produce satisfactory evidence that the persons having the preference have relinquished their prior right; "provided, such application shall be made within the space of

thirty days next ensuing the death of any such intestate as last aforesaid; but if such application be made after the expiration of thirty days it shall not be necessary to make such proof, and the county court may proceed to grant letters to such applicant or applicants, or any other person or persons, as he may think fit."

At the time of the appointment of Mr. Pitkin, February 14th, appellee was absent, and the statutory time had not expired. In her evidence she says she returned in March, but what date is not shown. It may be that Mr. Pitkin was improvidently appointed and the appointment erroneous. If such was the case, appellee could have made application and had him removed and his acts declared void. *Schnell v. City of Chicago*, 38 Ill. 389. But the right was waived by silence and acquiescence. But, however that may have been, the statute had no application to his successor, appointed in September, after Mr. Pitkin's resignation. No protest or objection was made to appellant's appointment, nor an application made by the appellee to be appointed. After the expiration of the year, and acquiescence in the appointment, there was no legal force in the claim of right as next of kin.

By section 4719, Mills' Ann. Stats., it is provided that letters of administration may be revoked where the administrator wastes or mismanages the estate or conducts himself in such manner as to endanger his coadministrators or securities. The court can exercise no discretionary power. The removal can only be for statutory cause. *Munroe v. The People*, 102 Ill. 406.

The language of the statute is sufficiently broad to admit proof of any waste or mismanagement. The language of the petition is as broad and general as that of the statute: " He has wasted and mismanaged the estate." Proof of any waste or mismanagement was admissible, and appellee signally failed to establish either.

It follows that the court erred in removing appellant, and that the judgment must be reversed and cause remanded.

*Reversed.*